IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

LAKES GAS CO.,

     Plaintiff/Counterclaim Defendant,

vs.

LOU'S LP CO.,

     Defendant/Counterclaimant.

No. C09-2016-JSS

RULING ON MOTION FOR
SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . 2

III.  RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     A.    *The Players*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     B.    *The Players' Prior Dealings*. . . . . . . . . . . . . . . . . . . . . . 4
     C.    *The 2008 Prepaid Contracts*. . . . . . . . . . . . . . . . . . . . . 6
     D.    *The September 2008 Contracts Between Lou's and Lakes*. . . . . . . . . 8

IV.  LEGAL STANDARD FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . 9

V.    DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     A.    *Lakes' Breach of Contract Claim*. . . . . . . . . . . . . . . . . . 10
     B.    *Lou's Counterclaim*. . . . . . . . . . . . . . . . . . . . . . . . . 12

VI.  SUMMARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VII. ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 18) filed by Plaintiff/Counterclaim Defendant Lakes Gas Co. ("Lakes") on January 28, 2010; the Resistance to Motion for Summary Judgment (docket number 19) filed by Defendant/Counterclaimant Lou's LP Co. ("Lou's") on February 22, 2010; and the Reply (docket number 20) filed by Lakes on March 4, 2010. The parties' requests for oral argument are denied. Pursuant to Local Rule 7.c, the Motion for Summary Judgment will be decided without oral argument.

## II. PROCEDURAL BACKGROUND

On February 25, 2009, Plaintiff/Counterclaim Defendant Lakes Gas Co. filed a Complaint (docket number 1) alleging breach of contract (Count I) and "action for the price" (Count II). On March 23, 2009, Defendant/Counterclaimant Lou's LP Co. filed an Answer and Counterclaim (docket number 6) generally denying the material allegations contained in the complaint, and alleging breach of contract in its counterclaim. On April 9, 2009, Lakes filed an Answer to Counterclaim (docket number 8) generally denying the material allegations contained in the counterclaim, and asserting certain affirmative defenses.

On June 29, 2009, Lakes filed an unresisted Motion to Amend Complaint (docket number 14) seeking leave to amend its complaint to include recovery of attorney fees. The Court granted the Motion to Amend on June 30, 2009. *See* docket number 15. Lou's filed an Answer to Amended Complaint (docket number 17) on July 10, 2009. Lakes timely filed the instant Motion for Summary Judgment (docket number 18) on January 28, 2010.

On May 11, 2009, both parties consented to proceed before a United States Magistrate Judge, pursuant to the provisions set forth in 28 U.S.C. § 636(c). A bench trial is scheduled before the undersigned on June 1, 2010.

## III. RELEVANT FACTS

### A. *The Players*

Lakes is engaged in the business of supplying liquid propane ("LP") to customers throughout the midwest, and is headquartered in Forest Lake, Minnesota.[1] According to its website, in 2006 Lakes was "the 12th largest retail marketer of propane in the United States, with 43 outlets in five states."[2] In 2005, Lakes "sold over 100 million gallons of propane to its customers."[3]

Lou's is located in Nashua, Iowa, and is a retailer of liquid propane. Lou's purchases liquid propane from suppliers such as Lakes, and then sells it to end users. Lou's has approximately 825 customers within 10-15 miles of Nashua, and its sales average just over one million gallons per year.[4] The only employees are its owners, Louis and Shelly Harrington.

During the time relevant to this lawsuit, Lou's obtained its LP through David Stevenson. According to Lakes, "Stevenson served as Lakes' independent sales representative for purposes of communicating with Lou's."[5] Stevenson entered into a "Sales Rep Agreement" with Lakes on August 5, 2003.[6] According to the agreement, Stevenson was not an employee, partner, or joint venturer with Lakes, and he was to

---

[1] Apparently, North America Energy is a division of Lakes, and the two entities are referred to by the parties interchangeably.

[2] *See* Lou's Appendix (docket number 19-2) at 19.

[3] *Id.*

[4] *See* Lakes' Appendix (docket number 18-3) at 7 (29:6-8) and 16 (84:6-16).

[5] *See* Lakes' Statement of Undisputed Material Facts (docket number 18-2) at 2; ¶ 8.

[6] *See* Lakes' Appendix (docket number 18-3) at 84-85; Lou's Appendix *(docket number 19-2)* at 21-22.

refrain from holding himself out as such to the public.[7] He was not authorized to "contractually bind" Lakes or hold himself out as having such authority.[8] As a sales representative, Stevenson was "authorized to take orders" and forward them to Lakes for Lakes' approval or rejection.[9] Stevenson agreed not to sell LP from any source other than Lakes.[10] When dealing with Lou's, Stevenson often did business as "Summit Propane."

### B. The Players' Prior Dealings

Lou's first purchased LP from Lakes in August 2003. In his deposition, Louis Harrington was shown a written contract between Lou's and North America Energy, dated August 4, 2003.[11] According to Harrington, it was a "prepaid contract where 250,000 gallons of propane would be delivered in the future specifically between the months of July and October of 2008 [sic]."[12] Harrington confirmed that the written contract was between Lou's and "North America."

Apparently, Lou's did business with Stevenson prior to him becoming a sales representative for Lakes. While Harrington was somewhat imprecise, he testified that he believed it was in 2004 when Stevenson "said he had become an Iowa sales representative

---

[7] *Id.* at 84; ¶¶ 1-2.

[8] *Id.*; ¶ 3.

[9] *Id.*; ¶ 4.

[10] *Id.* at 85; ¶ 10.

[11] *See* Lakes' Appendix at 5-6; 21:4-22:20.

[12] While the contract was identified as Exhibit 10 for Harrington's deposition, the Court cannot find it in either appendix submitted by the parties. It would appear that the delivery was actually for the months of July and October 2003.

for Lakes Gas now."[13] Harrington testified that after that "[a] 100 percent of my communication with Lakes Gas was through Dave Stevenson."[14]

Beginning in 2004, Lou's started buying liquid propane from Lakes through Stevenson/Summit on prepaid contracts.[15] Apparently, LP was delivered on the contracts without a problem. According to Lou's, it deferred to Stevenson's direction for the payment method on the prepaid contracts. Sometimes Stevenson had Lou's pay Lakes directly; and other times he had Lou's pay Summit, with Summit, in turn, paying Lakes. When Summit paid Lakes, Lakes credited Lou's accounts, and supplied liquid propane to Lou's in accordance with the prepaid contracts. For example, there are Lakes' Cash Sheets, Lakes' deposit slips, and Summit checks showing payment from Summit on behalf of Lou's, and Lakes crediting Lou's accounts for the payments from Summit.[16] Similarly, there are eight "Wire Transfer Detail Reports" originating from Summit's bank account and reporting funds being deposited in North America Energy's bank account, which apparently correspond to LP sold to Lou's, and with Lakes crediting Lou's account.[17] In its brief, Lou's argues:

> These [wire transfer] forms carry hand-written notations made by North America Energy/LAKES GAS by personnel at LAKES. These notations indicate to what account the money coming in from SUMMIT was to be credited. . . . That money and in large amounts was coming from SUMMIT to North America and was credited to LOU'S accounts. The wire transfer reports were for the most part in the year 2007,

---

[13] *Id.* at 14-15; 77:24-78:23.

[14] *Id.* at 8; 31:7-8.

[15] *Id.* at 72-80 (examples of prepaid contracts between Lou's and Summit for the purchase of liquid propane in the years 2005 and 2006).

[16] *See* Lou's Appendix (docket number 19-2) at 37-41.

[17] *Id.* at 42-55.

5

> with one in 2008. With this amount of money, and the circumstances under which these wires were coming in, certainly put North America/LAKES on notice that Dave Stevenson/SUMMIT was handling money from LOU's and transmitting money in LOU's favor.

See Lou's Brief in Resistance to Motion for Summary Judgment (docket number 19-1) at 4.

On January 26, 2007, Lou's entered into a contract for the purchase of 630,000 gallons of LP from North America Energy.[18] The contract was "Accepted by Seller" on January 26, 2007. The signature line states: "Dave Stevenson/Patricia Balfanz."[19] The invoice to Lou's was from North America Energy, but Lou's made payment to Summit Propane.[20] Lakes then apparently credited Lou's account. In a letter from North America Energy regarding the contract, Balfanz instructed Lou's that if it had any questions, it should contact Dave Stevenson.[21] Similar letters from North America Energy – instructing Lou's to contact Stevenson with any questions – were sent in 2005.[22] Lakes' president, Howard Sargeant, admitted that there were times when a customer would pay Summit for LP purchased from Lakes, with Summit then sending the money to Lakes for crediting on the customer's account.[23]

### C. The 2008 Prepaid Contracts

In its counterclaim, Lou's asserts that Lakes breached nine contracts for the delivery of propane gas. Eight of the contracts are attached to the counterclaim as Exhibits

---

[18] See Lakes' Appendix (docket number 18-3) at 69.

[19] At that time, Balfanz was a Lakes' employee.

[20] See Lou's Appendix (docket number 19-2) at 24-25.

[21] Id. at 28.

[22] Id. at 26-27.

[23] Id. at 15; 13:7-12.

2 through 9. *See* docket numbers 6-2 through 6-9. The first of those "contracts" appears, however, to be a "wire transfer report." *See* docket number 6-1. While it is not entirely clear to the Court, the wire transfer apparently corresponds to 100,000 gallons of LP purchased by Lou's on February 15, 2008. According to Lou's, some of the LP was delivered, but 31,978 gallons remain undelivered. Lou's claims Lakes owes $44,769.20 on that contract.[24]

Each of the remaining written contracts bears the name and address of "SUMMIT PROPANE" at the top. The documents, which are dated from 3/25/08 to 07/23/08, state: "This confirms the following transaction made between SUMMIT PROPANE & LOU'S L.P. under the following terms and conditions."[25] The contracts call for the delivery of 567,000 gallons of LP, at prices ranging from $1.40 to $1.725 per gallon. By the Court's calculation, the total cost of the eight contracts was $864,675. According to Lou's, it prepaid the full amount to Stevenson/Summit. Some of the contracts provided for shipment in "30 DAYS," while other contracts provided for shipment from "SEPTEMBER 30, 2008 THROUGH MARCH 31, 2009."[26] It is undisputed, however, that none of the LP was delivered, nor did Stevenson send any of the money to Lakes to be credited on Lou's account. In early August 2008, Lou's learned that Stevenson had never paid Lakes for the LP.

The parties also apparently dispute whether either side is owed money for "rack loads" of LP purchased by Lou's in July 2008. In his counterclaim, Lou's does not make any claim in this regard. On the sheet summarizing the amounts which he believes are

---

[24] *Id.* at 62.

[25] *See* Lakes' Appendix (docket number 18-3) at 27-34 (emphasis in original).

[26] *Id.*

7

owed by Lakes, however, Lou's lists $114,619.09 for that item.[27] In reviewing Harrington's testimony, however, it appears that the LP was actually delivered, and Lou's paid Stevenson for most of the LP. Stevenson filed for bankruptcy protection shortly afterward, however, and apparently did not send the payment on to Lakes.[28] In its brief, Lakes claims that Lou's owes $134,767.88 for "rack price purchases."

### D. The September 2008 Contracts Between Lou's and Lakes

Louis Harrington testified that upon learning that Stevenson had not sent Lou's payments to Lakes, and that Lakes would not deliver on the contracts signed by Stevenson, it "was the toughest period in our lives."[29] According to Harrington, however, it was necessary for Lou's to obtain LP to fulfill agreements with its customers. On September 2, 2008, after learning that Lakes was unaware of the prepaid contracts with Stevenson/Summit, Lou's contracted directly with Lakes for the purchase of 750,000 gallons of liquid propane to be delivered between October 2008 and February 2009.[30]

Lakes fully performed under the first two contracts and supplied Lou's with 500,000 gallons of liquid propane in October and November. Lou's failed to pay Lakes on either contract. Lakes delivered some liquid propane to Lou's on the third contract in December 2008. Lou's also failed to pay Lakes on the third contract. In response to questioning at his deposition, Harrington was evasive regarding whether he had *ever* intended to pay on the new contracts. In its brief, Lakes claims that the amounts owed on the three contracts, not including late charges, is $880,679.33. Lou's does not dispute that calculation. The contracts call for late payment charges of 1.5% per month on past due amounts.

---

[27] *See* Lou's Appendix (docket number 19-2) at 62.

[28] *See* Lakes' Appendix (docket number 18-3) at 17; 89:14-22.

[29] *Id.* at 9; 53:12-13.

[30] *Id.* at 20-25.

## IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Rakes v. Life Investors Insurance Co. of America*, 582 F.3d 886, 893 (8th Cir. 2009) ("Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law."). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g., Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Roeben v. BG Excelsior Ltd. Partnership*, 545 F.3d 639, 642 (8th Cir. 2008) ("To survive summary judgment, a

plaintiff must substantiate his [or her] allegations with enough probative evidence to support a finding in his [or her] favor."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## V. DISCUSSION

### A. Lakes' Breach of Contract Claim

First, Lakes asks that it be awarded summary judgment on its complaint. Lakes argues that it performed all of its obligations under the three contracts entered into with Lou's in September 2008; and Lou's admits that, other than the offset it asserts in its counterclaim, it owes the amounts reflected by the three contacts.[31] In its Brief in Resistance to Motion for Summary Judgment, Lou's states:

> From the start, LOU'S has admitted that it entered into the three [September] contracts with LAKES. LOU'S advanced a total of $75,000.00 to LAKES with respect to the three contracts as a down payment. LOU'S position has been that amounts owing to LAKES under the three contracts should be off-set by LOU'S Counterclaim.

Brief in Resistance to Motion for Summary Judgment (docket number 19-1) at 5.

In order to prove a breach of contract claim under Iowa law, a plaintiff must show: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that he or she performed all the terms and conditions required under the contract; (4) defendant

---

[31] In his deposition, Harrington testified:
    Q: Other than th[e] offset [related to your counterclaim], you would agree that the [three September 2008] contracts [entered into between Lou's and Lakes] were valid contracts . . .? You got the gas, you owe the money, it's just that you claim an offset because of the issue with Summit?
    A: Yes.

*Id.* at 17; 88:9-14.

breached the contract in some particular way; and (5) that he or she suffered damages as a result of the breach. *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) (citing *Iowa-Illinois Gas & Electric Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993)).

Lakes has established that there is no genuine issue of material fact regarding the three contracts executed by the parties on September 2, 2008, and that it is entitled to judgment as a matter of law. Lou's admits that it executed the three contracts. The terms of the contracts were clear: Lakes would deliver LP to Lou's, and Lou's would pay the price specified in the contracts. It is undisputed that Lakes performed its obligation under the contracts; it delivered the LP pursuant to the first two contracts, and delivered a portion of the LP under the third contract, until it realized that Lou's did not intend to pay. It is also undisputed that other than the down payments on the contracts, Lou's has not paid in accordance with the contracts. Lakes has suffered damages accordingly. Therefore, Lakes is entitled to summary judgment on the three contracts executed by the parties on September 2, 2008.

Lakes also asks that it be given summary judgment for "rack price purchases" made by Lou's between July 24, 2008 and October 30, 2008. The Court believes, however, that genuine issues of material fact preclude summary judgment in this regard. First, a portion of the rack purchases were apparently paid by Lou's to Stevenson, and are related to Lou's claim of "apparent authority," discussed below. Second, while the record is not entirely clear, Harrington apparently claims that rack purchases made after the problems with Stevenson came to light were paid directly to Lakes.[32]

---

[32] In his deposition, Harrington testified:
    Q.    So just that I understand your answer, in our complaint, we allege that for rack purchases between July 24, 2008, and October 30, 2008, there's still a balance due of 14 — excuse me, $14,767.88; that was your

(continued...)

11

In its brief, Lakes calculates the "late charges" associated with both the "rack price purchases" and the three contracts executed in September 2008. For the reasons set forth above, the Court concludes that Lakes is entitled to summary judgment on the contracts in the amount of $880,679.33, plus late charges on the three contracts. Lakes must submit an affidavit not later than seven days following the entry of this Order, calculating the late charges which it believes is owed on the three contracts, up to the date of the filing of this Order, and its calculation of the per day late charge applicable thereafter. Lou's will then have seven days following the filing of the affidavit in which to respond. The Court will then order that judgment enter in the appropriate amount.

### B. *Lou's Counterclaim*

Lakes also asks that Lou's counterclaim be summarily dismissed. Lakes argues that the nine prepaid contracts entered into between Lou's and Stevenson/Summit – which constitute the basis of Lou's counterclaim – contain no reference to Lakes, and are not binding on Lakes because Stevenson had no authority to act on Lakes' behalf. Lou's, on the other hand, argues that Stevenson was clothed with apparent authority to act on behalf of Lakes.

"Apparent authority is authority which, although not actually granted, has been knowingly permitted by the principal or which the principal holds the agent out as possessing." *Magnusson Agency v. Public Entity Nat. Company-Midwest*, 560 N.W.2d 20, 25-26 (Iowa 1997) (citations omitted). Therefore, apparent authority is determined by

---

[32](...continued)
           allegation. And Interrogatory Number 7 asked for you
           to respond to that. Tell us your response.
  A:     We paid the $114,619.09, which would have been the
           first rack loads, and that left a balance of $13,533.70
           that we still owe Lakes for that difference. Anything
           after that, we paid for and we went.

*Id.* at 18; 93:1-10.

"what the principal does, rather than by any acts of the agent." *Id.* at 26 (citation omitted). *See also Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 493 (Iowa 2000) (same).

> [T]he rule is that if a principal acts or conducts his business either intentionally, or through negligence, or fails to disapprove of the agents' act or course of action so as to lead the public to believe that his agent possesses authority to act or contract in the name of the principle, such principle is bound by the acts of the agent within the scope of his apparent authority as to any person who, upon the faith of such holding out, believes, and has reasonable ground to believe, that the agent has such authority, and in good faith deals with him.

*State v. Sellers*, 258 N.W.2d 292, 297 (Iowa 1977) (quoted with approval in *Rogers v. Energy Panel Structures, Inc.*, 2007 WL 2257566 (Iowa App.) at *4). *See also Clemens Graf Droste Zu Vischering v. Kading*, 368 N.W.2d 702, 711 (Iowa 1985) ("For apparent authority to exist, the principle must have acted in such a manner as to lead persons dealing with the agent to believe the agent has authority."). "[T]he burden of showing that an agent acted within the scope of the agent's actual or apparent authority is on the party claiming that such authority existed." *Waukon Auto Supply v. Farmers & Merchants Savings Bank*, 440 N.W.2d 844, 847 (Iowa 1989) (citation omitted).

Turning to the facts in the instant action, the Court concludes that there are genuine issues of material fact which preclude summary judgment. It is undisputed that Stevenson acted as Lakes' "representative for purposes of communicating with Lou's." In letters sent to Lou's in 2005, 2006, and 2007, Lakes advised Lou's to contact Stevenson if it had any questions. During that time, Lou's purchased LP from North America Energy, but made payment to Summit Propane. The LP was nonetheless delivered and Lou's account was properly credited.

Lou's knew that when it dealt with Stevenson and paid Summit, Lakes would honor the transactions, deliver the LP, and credit Lou's account. The best evidence of this course of dealing is the contract dated January 26, 2007. The contract was on a North

America Energy form, but was "accepted" by "Dave Stevenson/Patricia Balfanz." North America sent an invoice to Lou's. Lou's paid Summit Propane. Lakes credited Lou's account. Lakes instructed Lou's by letter to call Stevenson if it had "any questions regarding the contract."

At the least, there is a genuine issue of material fact regarding whether Lakes acted, either intentionally or through negligence, so as to reasonably lead Lou's to believe that Stevenson possessed authority to act on Lakes' behalf. *City of Keokuk v. Federal Signal Corp.*, 2009 WL 426518 (S.D. Iowa) at *6 ("Apparent authority can be established when the conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purported to act for him."). Viewing the evidence in the light most favorable to Lou's, the Court finds that there is a genuine issue of material fact as to whether Lakes' actions in its course of dealing during 2004-2007, reasonably led Lou's to believe that Stevenson was acting on Lakes' behalf when the nine prepaid contracts were entered into early in 2008.[33]

## VI. SUMMARY

The Court concludes that Lakes is entitled to summary judgment on its breach of contract claim. Lakes must submit an affidavit not later than seven days following the entry of this Order, calculating the late charges which it believes is owed on the three contracts, up to the date of the filing of this Order, and its calculation of the per day late charge applicable thereafter. Lou's will then have seven days following the filing of the affidavit in which to respond. The Court further concludes, however, that Lakes is not

---

[33] The Court believes that *Rogers v. Energy Panel Structures, Inc.*, 2007 WL 2257566 (Iowa App.), and *City of Keokuk v. Federal Signal Corp.*, 2009 WL 426518 (S.D. Iowa), which both found that there was not apparent authority which would bind the principal to actions by its purported agent, are distinguishable. In both cases, the action by the purported agent involved a single transaction. Here, the interaction between Lakes, Stevenson, and Lou's, occurred over a period of several years.

entitled to summary judgment on its claim for "rack price purchases," nor is it entitled to summary dismissal of Lou's counterclaim.

### VII.  ORDER

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment (docket number 18) filed by Plaintiff/Counterclaim Defendant Lakes Gas Co. is hereby **GRANTED** in part and **DENIED** in part, as set forth above.

DATED this 26th day of March, 2010.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA